IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRIS FORDHAM, )
)
Plaintiff, )
)
v. ) 1:13CV617
)
ALVIN KELLER, et. al., )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants Gary Crutchfield, Neal Leakez, Chandra Ransom and Lisa Starr's motion for judgment on the pleadings, or in the alternative, for summary judgment. (Docket Entry 68.) Plaintiff Chris Fordham has not filed a response.[1] The matter is ripe for disposition. For the following reasons, the Court will grant Defendants' motion.

---

[1] Plaintiff filed an "In Ex Parte" document which was docketed as Plaintiff's response to Defendants' summary judgment motion. (Docket Entry 74.) It appearing that this document was a supplement to Plaintiff's complaints regarding meaningful access to the Courts, the Court allowed Plaintiff additional time to file a response to Defendants' motion for summary judgment. (*See* Text Order dated 2/3/2017.) Plaintiff had until February 24, 2017 to file a response. Plaintiff failed to file a timely response. Instead, on March 6, 2017, Plaintiff submitted a notice to the Court indicating his "inability to meet [the] 2/24/17 deadline" and requesting an additional thirty (30) day extension of time to file a response. (Docket Entry 75 at 1; *see also* Docket Entry 76.) Plaintiff also requests that the Court "vacate or suspend" a previous Order denying his request for a temporary restraining order. (Docket Entry 75 at 7.) To the extent this document (Docket Entry 75) is construed as a motion by Plaintiff, the Court denies Plaintiff's request for additional time and for reconsideration of the previous Court order. Plaintiff has had nearly six (6) months to file a response to Defendants' motion for summary judgment. Additionally, Plaintiff has not set forth grounds which warrant reconsideration of the previous Court order. Thus, this motion is denied. Any further assertions in these documents (Docket Entries 75, 76) will not be considered in the Court's ruling herein.

## I. BACKGROUND

Plaintiff, a pro se prisoner, filed this action pursuant to 42 U.S.C. § 1983 against Defendants for their alleged failure to protect Plaintiff from an assault by other inmates and failure to grant his request for protective custody. (*See generally* Corrected Compl., Docket Entry 6.)[2] Plaintiff alleges that from December 18, 2009 until September 27, 2010, while housed at Scotland Correctional Institution ("Scotland"), he was subjected to hazardous and unsafe confinement conditions by Defendants and that they were "deliberate indifferently to [Plaintiff's] safety by their below and above violative act(s) or and inaction(s) of 'failing to protect [Plaintiff] from imminent known substantial risk of harm.'" (*Id.* ¶¶ 3, 5.) Plaintiff further alleges that on or about July 19, 2010, Ransom and Chavis witnessed Plaintiff being attacked by gang members which Defendants ignored. (*Id.* ¶¶ 7-9.) The next day, Plaintiff alleges that prison staff "opened all the cell doors in the block at once," subjecting him to a risk of serious harm. (*Id.* ¶ 11.) Plaintiff was attacked by another inmate (Inmate Cromartie"). (*Id.* ¶¶ 12-15.) Chavis and other officers allegedly failed to intervene during the assault. (*Id.* ¶ 17.) Plaintiff suffered injuries to most of his upper body; he also had staples placed in his head and was confined to a wheelchair. (*Id.* ¶ 19.) According to Plaintiff, the assaults continued from inmates until September 27, 2010, when Plaintiff left the facility. (*Id.* ¶ 21.) Plaintiff also alleges that he was subjected to hazardous conditions by Defendants because of Plaintiff's constant grievance submissions to the prison. (*Id.* ¶¶ 33-

---

[2] Plaintiff's original Complaint was stricken per the Court's order. (Docket Entry 3.) Thereafter, Plaintiff filed an amended Complaint which is also referenced herein as the Corrected Complaint. (Docket Entry 6.)

2

35.) He further alleges that Starr, Barnes, and Leakez refused to properly investigate Plaintiff's initial requests for protective custody which subjected him to an "imminent substantial [known] risk of harm." (*Id.* ¶ 29.) Plaintiff is suing Defendants in their individual and official capacities, and seeks punitive and compensatory damages against Defendants for his injuries in the amount of $250,000.00 "per liable Defendant [and] per claim." (*Id.* ¶ VI.) Plaintiff also seeks other relief, including attorney's fees, the termination of all Defendants, and new protective custody policies at the prison. (*Id.*)

Defendants' summary judgment material include briefs and the affidavit of Ransom with attached exhibits. Defendants' summary judgment materials first show that during July 2010, Ransom was employed as the Unit Manager of the Maximum Control ("MCON") housing unit at Scotland. (Ransom Aff. ¶ 2, Docket Entry 69.) During the time of the alleged incidents (July 19, 2010 and July 20, 2010), Ransom was on vacation and not present at work. (*Id.* ¶¶ 6-9; Ransom Time Sheet, Docket Entry 69-1.) Thus, Ransom did not witness any alleged attack upon Plaintiff by other inmates. (Ransom Aff. ¶ 10.) Furthermore, Ransom asserts that Plaintiff never requested protective custody during that time. (*Id.* ¶ 9.)

Defendants' summary judgment material also includes the affidavit of Kristie Stanback. (Stanback Aff., Docket Entry 71.) In July 2010, Stanback was employed at Scotland as an Assistant Superintendent of Custody and Operations III at Scotland. (*Id.* ¶ 2.) According to Stanback, an incident report was prepared by Sergeant Mary Pettiford regarding events occurring on July 20, 2010. (*Id.* ¶ 5; *see also* Incident Report, Docket Entry 71-1.) According

3

to the report, on July 20, 2010, another officer, Raphael McNeil, inadvertently pressed the emergency release button for the MCON unit, and a series of three inmate assaults took place, one of which was Plaintiff's assault by Inmate Cromartie. (Incident Report at 2-3.) Officer McNeil was attempting to open a specific door for maintenance, but instead accidentally activated the emergency release button. (Id. at 1-2.) He immediately sought help. (Id. at 2.) Several officers responded, and Unit Manager Jeffrey Fields and Captain Brad Perritt observed Plaintiff and Inmate Cromartie fighting inside Plaintiff's cell. (Id. at 3-4.) With a shank, Inmate Cromartie struck Plaintiff several times and the two were ordered to cease fighting. (Id. at 3.) They refused, and additional action was taken by officers to separate the two inmates. (Id.) Plaintiff was placed in restraints, removed from the area, and eventually taken to medical services for treatment of his injuries. (Id. at 3-4.) Inmate Cromartie was subsequently disciplined for his actions and transferred to another prison. (Stanback Aff. ¶ 13; Incident Report at 9.) Inmate Cromartie and two other inmates asserted that it was Plaintiff who instigated the fight. (Inmate Statements, Docket Entry 71-2.) Plaintiff refused to provide a statement. (Id. at 4.)

Following the incident Officer McNeil and another officer were disciplined for their actions. (Incident Report at 9.) Additionally, the emergency release bottom was rerouted to the Master Control booth and password protected. (Id.) Stanback asserts that Ransom and Leakez were not involved in the incident. (Stanback Aff. ¶ 18.) Crutchfield responded to the emergency call. (Id.) Stanback also asserts that none of Defendants were at fault, nor were they disciplined for the incident. (Id.) Plaintiff filed a grievance for the incident

4

on July 20, 2010 and named several prison employees, but not Leakez, Starr or Ransom. (Pl.'s Grievance, Docket Entry 71-3 at 2.) Stanback is also unaware of any report regarding an inmate assault on Plaintiff on July 19, 2010. (Stanback Aff. ¶ 20.)

## II. DISCUSSION

### Defendants' Motion for Judgment on the Pleading, or In the Alternative, Motion for Summary Judgment

Defendants have filed a motion for judgment on the pleadings, or in the alternative, a motion for summary judgment. (Docket Entry 68.) Courts "appl[y] the same standard for Federal Rule of Civil Procedure 12(c) motions [for judgment on the pleadings] as for motions made pursuant to Rule 12(b)(6)." *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009); *see also N.C. Farmers' Assistance Fund, Inc. v. Monsanto Co.*, 740 F. Supp. 2d 694, 703 (M.D.N.C. 2010) ("Although distinct from a motion to dismiss, a motion brought under Rule 12(c), at least when essentially asserting a failure to state a claim upon which relief may be granted, is subject to the same standard."). However, Rule 12(d) states, in part:

> If, on a [Motion for Judgment on the Pleadings], matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). Here, affidavits and exhibits have been presented by Defendants and considered in the undersigned's recommendation. Thus, Defendants' motion is more appropriately considered under the summary judgment standard.

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);

5

*Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting). When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Anderson*, 477 U.S. at 248-49.

In support of their motion for summary judgment, Defendants assert the following arguments: (1) Plaintiff has failed to state a claim against Crutchfield, Leakez, and Starr; (2)

6

Plaintiff has failed to exhaust his administrative remedies as to Ransom, Leakez and Starr; (3) Plaintiff's conditions of confinement did not, and do not constitute cruel and unusual punishment under the Eighth Amendment; (4) Defendants are entitled to qualified immunity from any claims by Plaintiff for monetary damages arising under 42 U.S.C. § 1983; (5) Sovereign and Eleventh Amendment immunities bar Plaintiff's claims for relief seeking damages from Defendants in their official capacities and from claims premised on negligence; and (6) Plaintiff's requests for injunctive relief are moot. (Defs.' Br. 6-20, Docket Entry 70.)

### Plaintiff's claims against Defendants Crutchfield, Leakez, and Starr

Defendants seek clarity as to the claims against Crutchfield, Leakez and Starr. (*Id.* at 10-11.) The Court will address this issue first. As Defendants state, when Plaintiff initially filed this action (along with his application to proceed *in forma pauperis*), he named several defendants, including Crutchfield, Leakez and Starr. (Original Compl., Docket Entry 2.) Plaintiff also filed a supplement to his original Complaint. (Docket Entry 4.) In an Order, the Court informed Plaintiff of his deficiencies, and allowed Plaintiff thirty (30) days to file a corrected complaint. (Order, Docket Entry 3.) Plaintiff was informed that he should "name only defendants who are actually alleged to have violated his rights." (*Id.* at 2.) Thereafter Plaintiff filed a corrected complaint, naming the following Defendants: Joel Herron, Chandra Ransom, Correction Officer Chavis, and "et. al responding staff." (Corrected Compl., Docket Entry 6.) Plaintiff was permitted to proceed and he provided summonses to the Court for several Defendants, including some individuals named in the original Complaint. (Docket Entry 8.) This included Defendants Crutchfield, Starr, and

7

Leakez although they were not named as Defendants in the corrected Complaint. They argue that they are not proper parties to this action as they are not named Defendants in the corrected Complaint. (Defs.' Br. at 10-11.)

The Court first notes that as a "general rule . . . an amended pleading supersedes the original pleading, rendering the original pleading of no effect. Thus, if an amended complaint omits claims raised in the original complaint, the plaintiff has waived those omitted claims. *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001) (internal quotations and citations omitted). Likewise, an amended pleading which no longer names a defendant as a party in the suit tacitly dismisses that individual from the suit. *See Polson v. Woods*, No. 9:08-CV-030, 2009 WL 2156908, at *2 (N.D.N.Y. July 15, 2009) (unpublished) (district court "ordering dismissal of [previously named defendant] from the action in view of plaintiff's failure to name him as defendant in his amended complaint"); *Alvarez-Flores v. Shelton*, No. CIVA 05-3261 SAC, 2006 WL 3004021, at *1 (D. Kan. Oct. 20, 2006) (unpublished) ("The amended complaint again names . . . as a defendant, but no longer names [previously named defendants] as parties in the lawsuit . . . Pursuant to plaintiff's amended pleading, the court dismisses [previously named defendants] as defendants in this action."). Here, even after specific instructions, Plaintiff's amended Complaint fails to name Starr, Crutchfield and Leakez as defendants in this lawsuit. In view of Plaintiff's action, this matter should be dismissed against those defendants.

In any event, a careful reading of Plaintiff's Corrected Complaint reveals that Crutchfield was neither named in the Corrected Complaint, nor were any allegations made

8

against him specifically. Although Starr and Leakez were not named as defendants in this action, they were specifically mentioned in Plaintiff's statement of claims before the Court. (*See* Corrected Compl. ¶ VI.) Even if Starr and Leakez were correctly named as defendants in this action, Plaintiff's allegations against Starr and Leakez are presented in conclusory fashion which, as discussed below, are insufficient to survive summary judgment.

### Exhaustion of Administrative Remedies

Leakez, Ransom, and Starr assert that Plaintiff failed to exhaust his administrative remedies against them. (Defs.' Br. at 6-9.) The Prison Litigation Reform Act ("PLRA") requires inmates to properly exhaust available administrative remedies before filing civil actions challenging the conditions of their confinement. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted); *see also Al-Amin v. Shear*, 218 F. App'x 270, 273 (4th Cir. 2007) ("It is undisputed that the Prisoner Litigation Reform Act (PLRA) requires prisoners to exhaust their administrative remedies before seeking relief in the federal courts.") (citing 42 U.S.C. § 1997e(a)). This "requirement requires 'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Leavitt v. NC Dep't of Pub. Safety*, 585 F. App'x

9

Case 1:13-cv-00617-JAB-JLW Document 77 Filed 03/22/17 Page 9 of 20

171 (4th Cir. 2014) (citing *Woodford*, 548 U.S. at 90) (emphasis in original). However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. In a recent decision, the Supreme Court recognized three situations where administrative remedies are essentially deemed "unavailable" to an inmate:

1) An administrative procedure that "operates as a simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates[;]"

2) An administrative scheme that is "so opaque that it becomes, practically speaking, incapable of use[;]" and

3) "[W]hen prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Ross v. Blake*, ___U.S.___, 136 S. Ct. 1850, 1859-60, 195 L.Ed.2d 117 (2016). The burden of proof is on Defendants to demonstrate that exhaustion has not been met. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005).

The Fourth Circuit has recognized the North Carolina Department of Public Safety's ("NCDPS") three-step procedure which governs the filing of grievances in each of its correctional facilities. *See, e.g., Moore*, 517 F.3d at 721. Here, Leakez, Starr and Ransom argue that Plaintiff did not fulfill his obligation under the PLRA by completing the grievance process. Plaintiff's grievance submitted in August 2010 addresses the incident whereby all prison doors were opened which led to the assault on Plaintiff by another inmate. (Pl.'s Grievance, Docket Entry 71-3 at 2.) Plaintiff mentions several prison officials, but fails to name Leakez, Starr, and Ransom. "The fact that [P]laintiff did not specifically name

10

[D]efendants in his grievances is not fatal because the PLRA does not require that a plaintiff name an individual in his grievance in order to exhaust his administrative remedies against that individual." *Millsaps v. Clark*, No. 5:13-CT-3127-FL, 2016 WL 4257342, at *4 (E.D.N.C. Aug. 11, 2016) (unpublished) (citing *Jones*, 549 U.S. at 217). Although an inmate is not required to name each defendant, he must put the prison "on adequate notice of the problem for which the prisoner seeks redress." *Williams v. Crosby*, No. 5:12-CT-3056-F, 2013 WL 791253, at *6 (E.D.N.C. Mar. 4, 2013) (unpublished) (quoting *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010)). Considering the motion in light most favorable to Plaintiff, the Court concludes that Plaintiff exhausted his remedies related to the opening of the cell doors and subsequent inmate assault. Indeed, "[w]e are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). However, after reviewing the merits of Plaintiff's claims against Leakez, Starr, and Ransom, the Court concludes that summary judgment should be granted.

## Individual Capacity Claims - Deliberate Indifference

Defendants are entitled to summary judgment because they were not engaged in deliberate indifferent conduct. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable

11

measures to guarantee the safety of the inmates." *Id.* at 832 (internal quotations and citation omitted). A successful Eighth Amendment claim contains two elements: the deprivation must be, objectively, "sufficiently serious," and the prison official must have demonstrated a "deliberate indifference to inmate health or safety." *Id.* at 834 (internal quotation and citation omitted). In *Farmer*, the Supreme Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it.

*Id.* at 837. "To establish a claim for failure to protect, an inmate must show: (1) serious or significant physical or emotional injury, and (2) that prison officials exhibited deliberate indifference to inmate health or safety." *Bacchus v. Scarborough*, 466 F. App'x 269, 271 (4th Cir. 2012) (internal quotations and citation omitted); *see also Pers. v. Lewis*, No. 3:12-CV-407-RJC, 2016 WL 1122680, at *5 (W.D.N.C. Mar. 22, 2016) (unpublished) ("[T]he denial of the prisoner's constitutional rights must be 'sufficiently serious' [and] the prison official must have a 'sufficiently culpable state of mind' . . . which means the official either purposefully caused the harm or acted with 'deliberate indifference'.") (internal citations omitted)).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Rather, the "deliberate indifference" prong requires Plaintiff to make "two showings:"

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should*

12

*have* recognized it; they actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that his actions were inappropriate in light of that risk. As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official action *must have* recognized that his actions were insufficient.

*Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (internal citations and quotations omitted) (emphasis in original). "The subjective component therefore sets a particularly high bar to recovery." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). As stated in *Farmer*,

> Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.

511 U.S. at 844. "Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) (citation omitted).

Here, Plaintiff claims that he was subjected to continuous unsafe and hazardous conditions during this time at Scotland. However, the record is devoid of such evidence. Plaintiff alleges that on or about July 19, 2010, he warned Ransom and others of assaults upon Plaintiff by other inmates and that he wanted protective custody. (Compl. ¶¶ 7-8.) However, the uncontroverted evidence demonstrates that Ransom was not present on that day. (Ransom Aff. ¶ 9; Ransom Time Sheet, Docket Entry 69-1.) Nor is there a record or report of such attack. (Stanback Aff. ¶ 20.) As to the inmate attack that occurred on July 20, 2017, it is clear from the evidence that such actions by prison officials were not deliberately indifferent to Plaintiff's safety. First, Ransom was not present during this event and Leakez

13

was not involved in the incident. (*Id.* ¶ 18.) As previously stated, a prison official accidently activated the switch to open all the cell doors, at which time Plaintiff was assaulted by another inmate. During a call for assistance, several officers came to the area including Crutchfield. (*Id.* ¶ 18.) None of the named Defendants were disciplined for the incident that took place. (*Id.*) Plaintiff's grievance makes no mention of Leakez, Starr or Ransom. (*Id.* ¶ 22; Pl.'s Grievance at 2.)

After the alleged incident, Plaintiff was provided medical attention, and Inmate Cromartie ware transferred to another prison. (Incident Report at 3-4; Stanback Aff. ¶ 13.) It is clear that the inadvertent opening of all cell doors was unfortunate and the result of staff error. However, none of the named Defendants were the result of such, neither is there evidence that they were responsible for the intentional assault of another inmate upon Plaintiff. "The Eighth Amendment imposes a duty on prison officials 'to protect prisoners from violence at the hands of other prisoners.'" *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (citing *Farmer*, 511 U.S. at 833). Nevertheless, "not 'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety.'" *Id.* (citing *Farmer*, 511 U.S. at 834). There is no evidence that Defendants were aware of any risk posed to Plaintiff. Moreover, the immediate actions of prison officials after the July 20, 2017 assault took place were not deliberate indifferent to Plaintiff's safety. *See Bacchus*, 466 F. App'x at 271 ("[T]he record indicates that the other officers involved in restraining [plaintiff] after he attacked [officer] acted appropriately to separate the men and provide medical treatment to [plaintiff].").

14

Furthermore, Ransom avers that Plaintiff never requested protected custody from her between August 2010 and September 2010. (Ransom Aff. ¶ 10.) At this stage, Plaintiff cannot rely solely upon his allegations and self-serving statements to survive summary judgment. *Jones v. Seifert*, 808 F. Supp. 2d 900, 920 (S.D.W. Va. 2011) (citing *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) ("[C]onclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion.")); *Solis v. Prince George's Cty.*, 153 F. Supp. 2d 793, 807 (D. Md. 2001) (citation omitted) ("[O]n a motion for summary judgment, bare allegations unsupported by legally competent evidence do not give rise to a genuine dispute of material fact."). Thus, even drawing all inference in the light most favorable to Plaintiff, Defendants' motion should be granted.

### Supervisory Liability

To the extent Plaintiff seeks to bring supervisory liability claims against Defendants, his claims fail. Defendants may not be held liable based upon a theory of *respondeat superior*, because *respondeat superior* generally is inapplicable to § 1983 suits. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). However, a supervisor may be liable for the actions of a subordinate if:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and
>
> (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

15

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Here, in the context of a failure to protect claim, Plaintiff

> assumes a heavy burden of proof in supervisory liability cases. He not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices.

*Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (internal quotations and citation omitted). The Court further notes that "[a] supervisor may be held liable under a tacit authorization theory if that supervisor fails to take action in response to a known pattern of comparable conduct occurring before the incident at issue took place." *Danser v. Stansberry*, 772 F.3d 340, 350 (4th Cir. 2014).

The evidence here is insufficient to establish supervisory liability upon Defendants. To the extent Defendants maintain supervisory roles, there is no evidence that Defendants had knowledge of any wrongful conduct by subordinates (including knowledge that their subordinates were aware that an attack upon Plaintiff was imminent), nor are there factual allegations to support "tacit authorization" on the part of Defendants. Again, Plaintiff unsupported conclusory allegations are not enough to raise a genuine issue of material fact as to this issue. Thus, Defendants' motion should be granted.[3]

---

[3] Plaintiff makes conclusory statements regarding violations of the 14th Amendment and the Americans with Disability Act ("ADA"). (Compl. ¶ 22.) Plaintiff has failed to put forth any factual support to advance such claims. *See Miller v. Hinton*, 288 F. App'x 901, 902 (4th Cir. 2008) (citation omitted) ("To establish a prima facie case under Title II of the ADA, [plaintiff] must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services . . .; and (3) such exclusion . . . was by reason of his disability."); *Morrison v.*

16

## Qualified Immunity

Defendants assert they are entitled to qualified immunity. (Defs.' Br. at 18-20) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: (1) whether the official violated a constitutional right; and if so, (2) whether the right was "clearly established" at the time of its violation. *See, e.g., Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 546-47 (4th Cir. 2010). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009).[4] Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically

---

*Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (Under an equal protection claim, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.").

[4] In *Pearson*, the Supreme Court overruled the mandatory two-step sequence adopted in *Saucier v. Katz*, 533 U.S. 194 (2001) in analyzing qualified immunity. Thus, after *Pearson*, courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances . . . ." *Pearson*, 555 U.S. at 236.

17

encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

Having found that Plaintiff has not stated a claim for a constitutional violation, this court finds that Defendants are entitled to qualified immunity. *See Abney v. Coe*, 493 F. 3d 412, 415 (4th Cir. 2007) ("If [an officer] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there."); *Ervin v. Mangum*, 127 F.3d 1099, 1997 WL 664606, at *5 (4th Cir. 1997) (unpublished table decision) (citation omitted) ("Because the evidence in support of [Plaintiff's] claim for failure to protect cannot constitute the violation of a constitutional right, the defendants are entitled to qualified immunity on that claim.").

### Eleventh Amendment/Sovereign Immunity

Defendants also assert immunity as to any claims against them in their official capacities and any claims premised on negligence. (Defs.' Br. at 16-18.) The Eleventh Amendment prohibits actions in federal court by individuals against a state unless the state has consented to suit or unless Congress has lawfully abrogated the states' Eleventh Amendment immunity. *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003). The doctrine of sovereign immunity under the Eleventh Amendment applies not only to actions in which the State is a named defendant, but also to actions against its departments, institutions, and agencies. Additionally, in North Carolina, "[a]ctions against officers of the State in their official capacities are actions against the State for the purposes of applying the doctrine of [sovereign] immunity." *Green v. Kearney*, 203 N.C. App. 260, 268, 690 S.E.2d 755, 762 (2010) (citation omitted); *see also Mullis v. Sechrest*, 347 N.C. 548, 554, 495 S.E.2d 721, 725 (1998) ("[O]fficial-capacity suits are merely another way of pleading an action against the governmental entity.").

18

Thus, a suit against Defendants in their official capacities is a suit against the NCDPS and North Carolina. Neither has consented nor waived immunity, therefore any claims against Defendants in their official capacity should be dismissed as a matter of law.[5]

### Injunctive Relief

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). To the extent injunctive relief is sought, Plaintiff is no longer incarcerated at Scotland and thus no longer subject to the challenged conditions in his claims. (*See* Pl.'s Notice of Change of Address, Docket Entry 67.) As such, this relief is moot. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("The transfer . . . has rendered moot [plaintiff's] claims for injunctive and declaratory relief[.]").

### Unserved Defendants

On February 8, 2016, a Notice was mailed to the Court regarding Plaintiff's failure to make service within 120 days upon Defendants Alvin Keller, Jr., Kieran Shannahan, Joel Herron, and Chavis. (*See* Notice, Docket Entry 55.) Plaintiff was given time to respond to the Notice and forewarned that dismissal of this action without prejudice may occur as to said Defendants. (*Id.*) The Court's docket reflects that this Notice was returned to the Court

---

[5] The North Carolina Tort Claims Act "provides a limited waiver of immunity and authorizes recovery against the State for negligent acts of its 'officer[s], employee[s], involuntary servant [s] or agent[s].'" *White v. Trew*, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013) (citing N.C.G.S. § 143–291(a)). "[T]he statutory language specifically confers jurisdiction over claims brought under the Act on the North Carolina Industrial Commission." *Oliver v. Baity*, No. 1:14CV921, 2016 WL 5724826, at *7 (M.D.N.C. Sept. 23, 2016) (unpublished). Thus, to the extent Plaintiff seeks relief from claims pursuant to the Act, this Court lacks jurisdiction to here such claims. *Id.* at *11.

19

after Plaintiff refused receipt of it. Pursuant to Federal Rule of Civil Procedure 4(m), Defendants Alvin Keller, Jr., Kieran Shannahan, Joel Herron, and Chavis will be dismissed from this action without prejudice.

### III. CONCLUSION

For the reasons stated above, **IT IS THEREFORE ORDERED** that Defendants Gary Crutchfield, Neal Leakez, Chandra Ransom and Lisa Starr's Motion for Judgment on the Pleadings, or in the alternative, for Summary Judgment (Docket Entry 68) is **GRANTED.**

As to all unserved Defendants, **IT IS THEREFORE ORDERED** that this action be dismissed without prejudice.

To the extent Plaintiff's letter document (Docket Entry 75) is construed as a motion for an extension of time and a motion for reconsideration, **IT IS THEREFORE ORDERED** that this motion is denied.

This, the 20 day of March, 2017

United States District Judge